UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DONNIE RAINEY II,

     Plaintiff,

v.

                                          Civil Action No. 2:25-cv-315

AMERIHOME MORTGAGE CO., LLC, *et al.*,

     Defendants.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants' Amerihome Mortgage Co., LLC and Cenlar FSB (collectively, "Defendants") Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 23. Defendant filed a Memorandum in Support of the Motion. ECF No. 24. Plaintiff Donnie Rainey II ("Plaintiff") filed a response in opposition. ECF No. 25. Defendants filed a Reply. ECF No. 28. The Court has considered the parties' memoranda, and this matter is ripe for judicial determination. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## I. FACTUAL AND PROCEDURAL HISTORY

Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiff, the following alleged facts are drawn from the Amended Complaint.

In or around 2012, Plaintiff purchased a home located in Portsmouth, Virginia, with a purchase money mortgage. ECF No. 22 ¶ 13 ("Am. Compl."). On or about April 25, 2016, Plaintiff refinanced the purchase money mortgage into a new mortgage insured by the Federal Housing

1

Authority ("FHA"). *Id.* ¶ 14. On or about March 1, 2022, Amerihome Mortgage Co., LLC acquired servicing rights for the mortgage and Cenlar FSB became the subservicer. *Id.* ¶ 16.

On or about August 29, 2022, Plaintiff filed a lawsuit against Defendants and CMG Mortgage, Inc., the previous mortgage servicer, based on alleged errors in the loss mitigation process following a Covid-19 forbearance. *Id.* ¶ 19. On or about February 24, 2024, Plaintiff executed a settlement agreement with Defendants and CMG Mortgage, Inc. *Id.* ¶ 21. Under the settlement agreement, Defendants and CMG Mortgage, Inc. agreed to implement an FHA Standalone Partial Claim ("Partial Claim"), which created a $52,652.13 subordinate, non-interest-bearing lien, held by the U.S. Department of Housing and Urban Development. *Id.* ¶ 22.

Defendants and CMG agreed to adjust the amount owed on the Mortgage because the accrued arrearage on the mortgage exceeded the maximum partial claim amount, and the FHA regulations require a partial claim to make a mortgage current. *Id.* ¶¶ 24-25. To satisfy the FHA partial claim regulations, Defendants and CMG agreed to apply $24,964.10 as a credit to the principal balance of the mortgage ("Offset Payment"). *Id.* ¶ 26. Plaintiff contends that both the Partial Claim and the Offset Payment should have resulted in him being current on the mortgage, including satisfaction of any negative escrow balance. *Id.* ¶ 27.

Prior to the settlement agreement, Defendants conducted an escrow analysis on July 11, 2023, which found that Plaintiff owed an escrow shortage of $3,241.65. *Id.* ¶¶ 30-32. Plaintiff alleges that the negative escrow balance on the mortgage was not a result of Plaintiff's default under the terms of the mortgage but occurred through "Defendants' and CMG's own missteps." *Id.* ¶ 28. Plaintiff was given the option to spread the escrow payment over 12 months, which would make his monthly payment $1,838.96, or pay the shortage in full, which would make his new monthly payment $1,568.18. *Id.*

2

On January 18, 2024, Defendants provided Plaintiff with a Partial Claim approval letter ("Approval Letter") which listed his monthly payment as $1,586.82 and stated that the "Payment Amount is an estimate and subject to change after an escrow analysis." *Id.* ¶ 35. Plaintiff alleges that Defendants did not conduct an escrow analysis to change the estimated monthly payment or to determine whether an escrow shortage remained following the payoff of the shortage through the Partial Claim. *Id.* ¶ 36. Plaintiff contends that since the escrow shortage amount was paid in full, the monthly payment should have been either $1,568.18, or pursuant to the Approval Letter, $1,586.82. *Id.* ¶ 34.

On or about March 11, 2024, Plaintiff called Defendants to make his first payment following the reinstatement of his mortgage, but Defendants told him that his account was in foreclosure and that it could not accept payment. *Id.* ¶¶ 37-38. On or about March 14, 2024, Plaintiff called Defendants and paid $1,586.82 by phone. *Id.* ¶ 39. Plaintiff alleges that rather than holding his payment in suspense pending implementation of the Partial Claim, Defendants applied the payment to the past due amount that the Partial Claim and Offset Payment already covered. *Id.* ¶ 39.

On or about April 2, 2024, Defendants sent Plaintiff a monthly mortgage statement that showed the application of the Partial Claim but showed a negative escrow amount of $24,058.85, a past due amount of $5,694.96, and a monthly payment amount of $1,838.96. *Id.* ¶¶ 40-41. On April 3, 2024, Plaintiff made another payment of $1,586.82 but asserts that it is unclear whether and how Defendants applied that payment. *Id.* ¶¶ 44-45. On or about April 12, 2024, Defendants sent Plaintiff a dunning letter indicating that he had not made his mortgage payments for March and April. *Id.* ¶ 46.

3

Around that same time, Plaintiff learned that Defendants began reporting a foreclosure notation to at least one of the major consumer reporting agencies. *Id.* ¶ 48. Plaintiff asserts that he regularly monitors his credit and believes that Defendants had not reported anything related to foreclosure until nearly two months after the Settlement Agreement that brought the mortgage current. *Id.* ¶ 49. Plaintiff also contends that the foreclosure notation did not accurately reflect the status of the account because the Defendants indicated that all such actions were on hold pending the parties' prior dispute. *Id.* ¶ 50.

On or about April 24, 2024, Plaintiff sent a dispute to TransUnion indicating that the foreclosure notation was inaccurate. *Id.* ¶ 51. Plaintiff also reached out to Defendants, through counsel, to seek correction of the credit reporting. *Id.* ¶ 52. On or about May 1, 2024, Defendants notified Plaintiff that they had removed the erroneous foreclosure notification, but the removal occurred after Plaintiff was denied a credit request. *Id.* ¶ 53. Defendants also reported an unpaid principal balance of $228,000 as of May 2024, which Plaintiff contends far exceeds the amount that he owed. *Id.* ¶ 54.

On or about May 4, 2024, Plaintiff called Defendants to make another mortgage payment by phone, but Defendants indicated that they would not accept his payment over the phone. *Id.* ¶¶ 55-56. On or about May 7, 2024, Plaintiff mailed a check for $1,587 to Defendants for his May 2024 monthly payment. *Id.* ¶ 57. Plaintiff's monthly mortgage statement dated May 17, 2024, listed his monthly payment amount as $1,838.96, and the escrow balance was positive. *Id.* ¶ 59.

In or around May and June 2024, Defendants continued to send dunning letters and making collection calls to Plaintiff. *Id.* ¶ 60. In or around June 2024, Plaintiff contacted Defendants to determine the basis for his purported delinquency status. *Id.* ¶ 61. Defendants indicated that

4

Plaintiff's payment increased because of a recent escrow analysis, but Plaintiff noted that such an analysis has not been conducted since July 11, 2023. *Id.* ¶ 62.

On or about June 10, 2024, Plaintiff made a monthly payment of $1,587. *Id.* ¶ 64. Plaintiff's June 17, 2024, mortgage statement indicated a past due amount of $2,018.21. *Id.* On or about June 25, 2024, Defendant sent Plaintiff a check for $797.98 "as purportedly insufficient to bring the Mortgage current[.]" *Id.* ¶ 65. On or about July 3, 2024, Plaintiff contacted Defendants again to determine the basis for his purported delinquency status. *Id.* ¶ 67. Plaintiff alleges that Defendants confirmed that his March 2024 payment had been applied to May 2020, although that month was included in the Partial Claim and Offset Payment amounts. *Id.* ¶ 68. Defendants also refused to make any adjustments to the account statement and demanded that Plaintiff make two payments of $1,838.32. *Id.* ¶ 69.

On or about May 20, 2024, Plaintiff sent a qualified written request letter ("QWR") to Defendants. *Id.* ¶ 70. The letter included Plaintiff's name and account number, property address, and identified several errors such as Defendants' failure to apply his March and April payments and their contention that he was past due on his mortgage. *Id.* ¶ 71. On July 2, 2024, Defendants issued a response that stated they applied the March and April 2024 payments to the mortgage and indicated that the April 2024 payment had been held in suspense pending full implementation of the Partial Claim. *Id.* ¶¶ 72-73. The letter did not indicate how they applied the March payment, did not indicate that the payments Plaintiff made were insufficient or partial, and did not address the delinquency status of the mortgage. *Id.* ¶¶ 72, 74.

In July 2024, Plaintiff made his monthly payment of $1,587. *Id.* ¶ 75. On or about July 17, 2024, Plaintiff sent another QWR to Defendants. *Id.* ¶ 76. The July 2024 QWR explained that the Settlement Agreement brought the mortgage current, including satisfaction of the negative escrow

balance, but he has been overcharged because Defendants' have included an incorrect escrow balance in his monthly statements. *Id.* ¶ 77. Plaintiff's July 2024 QWR further stated "[p]lease correct these errors, return my account to good standing, remove any late charges, remove any negative credit reporting, and accept my payments of $1,587." *Id.* ¶ 78.

On or about July 23, 2024, Defendants called Plaintiff and notified him that his account was one month past due because Plaintiff's March 2024 payment had been applied to May 2020. *Id.* ¶ 80. Defendants indicated that they would correct this error but Plaintiff notes that they have not done so. *Id.* ¶ 81. Defendants further indicated that the applicable monthly payment amount for July 2024 was $1,568.18, but late fees and corporate advance fees had been added to the amount due. *Id.* ¶ 82. The monthly payment amount corresponded with the amount listed in the July 11, 2023, escrow analysis after subtracting the shortage spread payment. *Id.* ¶ 83. Plaintiff notes that Defendants did not seem to have conducted a new escrow analysis to arrive at that payment amount, and although a new analysis should not have been necessary, he notes that the July 2024 escrow analysis would not go into effect until September 2024. *Id.* ¶¶ 84-85.

On about August 14, 2024, Defendants called Plaintiff and requested that his attorney fax a copy of the Settlement Agreement and proof of the March 2024 payment. *Id.* ¶ 86. Defendants also indicated that the monthly payment amount had been updated to $1,568.18 for August and $1,542.94 afterwards, but an arrearage balance remained. *Id.* ¶ 87. On August 6, 2024, Plaintiff made his monthly payment. *Id.* ¶ 88. On or about August 27, 2024, Plaintiff's attorney faxed the requested documents to Defendants, including confirmation from both Defendants' and Plaintiff's bank for the March 2024 payment. *Id.* ¶ 89.

On or about September 9, 2024, Plaintiff made his monthly payment. *Id.* ¶ 90. Defendants continued to send Plaintiff dunning letters, make collection calls, and threaten foreclosure. *Id.* ¶

6

91. On or about September 19, 2024, Defendants messaged Plaintiff through their online portal asking for a copy of the check for the March 2024 payment. *Id.* ¶ 92. Plaintiff responded stating that the payment was made via electronic draft, not by check, and provided a copy of his bank statement showing the draft. *Id.* ¶ 93. On or about September 27, 2024, Defendants responded to the July 2024 QWR, stating that Plaintiff had not made a payment for May 2024. *Id.* ¶¶ 94-95. Plaintiff notes that the payment is documented as a partial payment made on May 7, 2024, in his monthly statement dated May 17, 2024. *Id.* ¶ 95. Plaintiff alleges that Defendants admitted that there had been "a delay in adjusting the payment amount to reflect the Partial Claim agreed upon amount of $1,586.82 until June 2024." *Id.* ¶ 96. Additionally, Defendants allegedly continued to consider Plaintiff's payments for March through June 2024 as partial payments based on the uncorrected payment amount. *Id.* ¶ 98. Plaintiff also alleges that Defendants' letter inaccurately stated that Plaintiff's March 2024 payment was held in a suspense account, when it had actually been erroneously applied to May 2020, resulting in a full month delinquency. *Id.* ¶ 99.

Plaintiff made his monthly payments on time for September, October, and November 2024. *Id.* ¶ 102. In or around November 2024, Defendants began reporting to the major consumer reporting agencies that Plaintiff was past due on his payments. *Id.* ¶ 103. On or about November 26, 2024, Plaintiff called Defendants, who told him that if he was current on his loan, they would remove the negative credit information that they reported. *Id.* ¶ 105. Plaintiff subsequently made a payment of $1,542.94 to bring the mortgage current based Defendant's accounting. *Id.* ¶ 106. On December 6, 2024, Defendants sent Plaintiff a letter indicating that they would not remove the derogatory information and Plaintiff's credit score still reflects a 30-day delinquency for November 2024. *Id.* ¶¶ 107-108.

7

Plaintiff alleges that, at the time the Complaint was filed, his monthly statements reflect that he owed $233 in fees. *Id.* ¶ 110. On March 9, 2025, the parties entered into an agreement tolling all applicable statutes of limitations through May 31, 2025. *Id.* ¶ 111.

Plaintiff alleges that he has suffered significant damage to his credit, resulting in credit denials, and he has suffered emotional distress. *Id.* ¶¶ 112-113. Accordingly, Plaintiff is seeking actual damages, statutory damages, cost of litigation and attorney's fees, pre and post judgment interest, and any other relief that the Court deems just and proper. *Id.* at 18. Specifically, Plaintiff asserts three Counts against Defendants:

Count I.  Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq. against Defendant Cenlar (*Id.* ¶¶ 114-128);

Count II.  Violation of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605(e) against all Defendants (*Id.* ¶¶ 129-137);

Count III.  Violation of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605(k) against all Defendants (*Id.* ¶¶ 138-143).

On October 17, 2025, Plaintiff filed an Amended Complaint. ECF No. 22. On October 31, 2025, Defendants filed a Motion to Dismiss and Memorandum in Support. ECF Nos. 23, 24. On November 14, 2025, Plaintiff filed his Memorandum in Opposition. ECF No. 25. On November 24, 2025, Defendants replied. ECF No. 28.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th

Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

## III. DISCUSSION

Under Rule 12(b)(6), Defendants move to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted. ECF Nos. 23, 24. For the reasons stated below, Defendants' Motion to Dismiss is granted in part and denied in part.

9

### A. Count I: Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692

Plaintiff alleges that Defendant Cenlar violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), while serving as a subservicer and debt collector for Plaintiff's mortgage on behalf of Defendant Amerihome. Am. Compl. ¶¶ 116-117. First, Plaintiff alleges that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2)(A), and e(10) by making the following misrepresentations: 1) Plaintiff was delinquent on his mortgage payments; 2) Defendant misled Plaintiff regarding the monthly mortgage payments and/or escrow shortage payments that were purportedly due; and 3) Defendant falsely reported that Plaintiff's mortgage payment increased because of a recent escrow analysis, when Defendants' had not conducted such an analysis in ten months. *Id.* ¶¶ 118-120. Second, Plaintiff alleges that Defendant Cenlar violated the FDCPA by misrepresenting how they would apply his March 2024 mortgage payment, that he was subject to foreclosure, that they would remove derogatory credit reporting, and that they were entitled to late fees. *Id.* ¶¶ 121-125. Lastly, Plaintiff alleges Defendant violated the FDCPA by threatening to report him as delinquent on his payments when they knew that he was not delinquent, and by "wrongfully returning Plaintiff's payments, failing to accept payments, and misapplying payments to create and/or deepen a default on the Mortgage." *Id.* ¶¶ 126-127.

#### 1. Monthly Mortgage Statements

Plaintiff has sufficiently alleged a claim under 15 U.S.C. §§ 1692e(2) and (10) because the facts alleged support the allegations that Defendant falsely represented "the character, amount, or legal status" of his monthly mortgage payment and utilized "false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e(2), (10).

The FDCPA "authorizes private civil actions against debt collectors who engage in certain prohibited practices." *Rotkiske v. Klemm*, 589 U.S. 8, 9 (2019). To state a claim under the FDCPA,

10

a plaintiff must plausibly allege that "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 648 (E.D. Va. 2010), *aff'd*, 442 Fed. Appx. 816 (4th Cir. 2011) (unpublished). Defendant Cenlar contends that Plaintiff failed to allege facts sufficient to demonstrate that it violated a provision of the FDCPA in their attempt to collect the debt, because their actions were authorized by the Mortgage and their statements accurately reflected the status of Plaintiff's account. ECF No. 24 at 11.

Section 1692e of the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means" to collect a debt and provides a non-exhaustive list of prohibited conduct. 15 U.S.C. § 1692e. The relevant provisions include:

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt....

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken....

11

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed....

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

*Id.* Plaintiff alleges that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2) and (10) by making the following misrepresentations: 1) Plaintiff was delinquent on his mortgage payments; 2) misled Plaintiff regarding the monthly mortgage payments and/or escrow shortage payments that were purportedly due; and 3) falsely reported that Plaintiff's mortgage payment increased because of a recent escrow analysis, when Defendants' had not conducted such an analysis in ten months. *Id.* ¶¶ 118-120. Second, Plaintiff alleges that Defendant Cenlar violated the FDCPA by misrepresenting how they would apply his March 2024 mortgage payment, that he was subject to foreclosure, that they would remove derogatory credit reporting, and that they were entitled to late fees. *Id.* ¶¶ 121-125. Lastly, Plaintiff alleges Defendant violated the FDCPA by threatening to report him as delinquent on his payments when they knew that he was not delinquent, and by "wrongfully returning Plaintiff's payments, failing to accept payments, and misapplying payments to create and/or deepen a default on the Mortgage." *Id.* ¶¶ 126-127.

Defendant contends that Plaintiff's claim under the FDCPA fails for two reasons. First, Defendant Cenlar argues that under the Real Estate Settlement Procedures Act ("RESPA"), it was not required to complete an escrow analysis prior to the conclusion of the escrow analysis computation year, to reduce Plaintiff's payment after implementing the Partial Claim. ECF No. 24 at 10. Thus, Plaintiff was required to pay the amount due in his monthly mortgage statements, not the amount included in the letter he received estimating his monthly payment amount following

12

the execution of the Partial Claim. *Id.* at 7. Second, Defendant Cenlar argues that Plaintiff fails to state a claim under the FDCPA because the mortgage statements issued to Plaintiff were not false or misleading. *Id.* at 11.

An escrow account analysis is defined as "the accounting that a servicer conducts in the form of a trial running balance for an escrow account to: (1) Determine the appropriate target balances; (2) Compute the borrower's monthly payments for the next escrow account computation year and any deposits needed to establish or maintain the account; and (3) Determine whether shortages, surpluses or deficiencies exist." 12 USC § 1024.17(b). If the escrow account analysis reveals a shortage that is greater than one month's escrow account payment, then a servicer "may require the borrower to repay the shortage in equal monthly payments over at least a 12-month period." 12 USC § 1024.17(f)(3)(i)(C).

Under RESPA, a servicer "shall conduct an escrow account analysis upon establishing an escrow account and at completion of the escrow account computation year." 12 U.S.C. § 1024.17(f)(1)(i). The statute defines escrow account computation year as the "12-month period that a servicer establishes for the escrow account beginning with the borrower's initial payment date...." 12 U.S.C. § 1024.17(b)(3). Section 1024.17(f)(1)(ii) further provides that "[t]he servicer may conduct an escrow account analysis at other times during the escrow computation year." Thus, while a servicer may conduct an escrow account analysis at any time during the escrow computation year, they are only required to conduct an escrow account analysis at the completion of the escrow account computation year.

Here, Defendant Cenlar conducted an escrow analysis on July 11, 2023, which demonstrated that Plaintiff had an escrow shortage in the amount of $3,241.65. *See* Am. Compl. ¶ 30; ECF No. 24-2. Plaintiff was given the opportunity to either pay the full shortage amount of

13

$3,241.65 or pay the shortage amount over the course of 12 monthly mortgage payments. ECF No. 24-2 at 1. The escrow analysis provided that starting on September 1, 2023, if Plaintiff paid the shortage in full, his monthly mortgage payment would be $1,568.18 but if he did not make a full payment then his payment would be divided evenly over 12-months, making his monthly payment $1,838.32. *Id.* Plaintiff did not pay the escrow shortage in full by the provided date, which resulted in a monthly mortgage payment of $1,838.32.

Plaintiff contends that since "the Settlement Agreement eliminated any escrow deficiency by paying it in full, Plaintiff's monthly payment should have been only the $1,568.18 stated in the Escrow Analysis" and "the monthly payment should have automatically reverted" to that amount. Am. Compl. ¶¶ 32-33. Alternatively, Plaintiff argues that his monthly mortgage payment should have been $1,586.82 based on the estimate he received in the Approval Letter that accompanied the Partial Claim. ECF No. 25 at 3. Instead, Defendant Cenlar sent Plaintiff a monthly mortgage statement for $1,838.96, which is the amount Plaintiff owed prior to satisfying his escrow shortage amount.

The United States Court of Appeals for the Fourth Circuit, has recognized that "[w]hether a communication is false, misleading, or deceptive in violation of [Section] 1692e is determined from the vantage of the least sophisticated consumer." *Powell v. Palisades Acqusition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014). While RESPA may not have required Defendant Cenlar to conduct an escrow analysis in the middle of the escrow analysis computation year, under the circumstances, the least sophisticated consumer could interpret Defendant Cenlar's monthly mortgage statements to be a false representation of the monthly mortgage amount and a false representation or deceptive means to collect the escrow shortage amount. *See* 12 U.S.C. § 1024.17(f)(1)(i) (providing that a servicer shall conduct an escrow analysis at the completion of

14

the escrow account computation year). On January 18, 2024, Defendant Cenlar provided Plaintiff with the Approval Letter for the Partial Claim which estimated his new monthly payment amount to be $1,586.82. Am. Compl. ¶ 23. The letter provided that the payment amount is an estimate that is subject to change after an escrow analysis. *Id.* ¶ 35. However, the purpose of the Partial Claim was to make Plaintiff current on his mortgage, including any escrow shortage. Defendant Cenlar concedes that the Partial Claim satisfied his escrow shortage. ECF No. 28 at 3. Additionally, since the Partial Claim satisfied any escrow shortage that Plaintiff had, the least sophisticated consumer would plausibly believe that a new escrow analysis would lower their monthly mortgage payment. Also, Defendant Cenlar suggested that the estimate was subject to change after an escrow analysis, but they instead increased the monthly mortgage amount without conducting a new escrow analysis. The estimated monthly mortgage payment in the Approval Letter coincided with the monthly mortgage payment provided in the 2023 Escrow Analysis, which provided that Plaintiff's monthly mortgage payment would be $1,568.18 if he paid his escrow shortage in full. Am. Compl. ¶ 32. However, Plaintiff's monthly mortgage statements charged him for an escrow shortage that had already been paid to Defendant Cenlar through the Partial Claim. Therefore, Plaintiff plausibly alleges that the least sophisticated consumer would be led to believe that his payment would be similar to the estimate provided in the Approval Letter because it estimated his monthly mortgage payment after the satisfaction of his escrow shortage.

Defendants argue that Plaintiff "remained obligated to pay the amounts listed in his monthly mortgage statements-including the escrow shortage-until the next scheduled analysis." ECF No. 24. at 10. Notwithstanding the issue of whether Defendants were obligated to conduct an escrow account analysis prior to the conclusion of the escrow computation year, Plaintiff still plausibly alleges facts sufficient to state a claim under the FDCPA. First, Defendant Cenlar misled

15

Plaintiff by omitting the fact that they would not conduct an escrow analysis to remove his escrow shortage and lower his monthly payment after the execution of the Partial Claim, until the end of the computation year. Second, the Approval Letter that Defendant Cenlar sent to Plaintiff suggested that he would not be charged for the satisfied escrow shortage because the estimated payment amount did not include the additional charge for the previously owed escrow shortage amount and indicated that the estimate would be subject to change after an escrow analysis. Am. Compl. ¶ 35. Despite these representations suggesting that Plaintiff would not be charged for his satisfied escrow shortage, Defendant Cenlar ultimately charged Plaintiff for his satisfied escrow shortage amount. Therefore, Plaintiff plausibly alleges that Defendant Cenlar issued a false and or misleading statement from the vantage of the least sophisticated consumer.

Furthermore, on May 17, 2024, Defendant Cenlar issued Plaintiff a monthly mortgage statement that listed Plaintiff's escrow balance as positive. Am. Compl. ¶ 59. In the last two months of the escrow analysis computation year, Defendant Cenlar lowered Plaintiff's monthly mortgage payment to $1,568.18 and sent Plaintiff a letter stating that there had been "a delay in adjusting the payment amount to reflect the partial claim agreed upon amount of $1,586.82 until June 2024." Am. Compl. ¶¶ 82, 87, 96. Such conduct suggests that Defendant Cenlar was aware that Plaintiff had been charged the incorrect amount and falsely represented the amount and or utilized false representation to collect Plaintiff's mortgage payment. *See* 15 U.S.C. §§ 1692e(2)(A) and (10). Therefore, Plaintiff alleges sufficient facts to state a claim under 15 U.S.C. §§ 1692e(2)(A) and (10).

### 2. Misapplication of March 2024 Mortgage Payment

Plaintiff argues that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2)(A), (10), and 15 U.S.C. § 1692f by "falsely representing to Plaintiff that it was accepting his payment in March 2024 to pay that month's mortgage while actually applying it to May 2020." Am. Compl. ¶ 121. Plaintiff alleges that on or about March 14, 2024, he called Defendants and made a monthly mortgage payment in the amount of $1,586.82. *Id.* ¶ 39. After receiving collection calls and dunning letters from Defendant Cenlar indicating that Plaintiff was delinquent on his mortgage, Plaintiff called Defendants to determine the cause of his purported delinquency. *Id.* ¶ 67. During that call, Defendants indicated that Plaintiff's March 2024 payment had been applied to May 2020, even though that month had already been paid for by the Partial Claim and Offset Payment. *Id.* ¶ 68. On July 2, 2024, Defendants responded to Plaintiff's qualified written request seeking correction of errors involving his account, stating that they applied Plaintiff's March 2024 payment to his mortgage but did not specify how they applied the March payment. *Id.* ¶ 72. Defendants confirmed that they misapplied Plaintiff's March 2024 payment during a collection call on July 23, 2024. *Id.* ¶ 79. On September 27, 2024, in response to Plaintiff's qualified written request seeking correction of errors involving his account, Defendants responded stating that Plaintiff's March 2024 payment was held in a suspense account. *Id.* ¶ 99.

"Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the least sophisticated consumer, evaluating how that consumer would interpret the allegedly offensive language." *Powell*, 782 F.3d at 126 (4th Cir. 2014). Additionally, false, deceptive, and misleading statements must be material to be actionable. *Id.* ("A logical corollary of the least sophisticated consumer test is that false, deceptive, and misleading statements must be material to be actionable"). "The materiality requirement limits

17

liability under the FDCPA to genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'" *Id.* (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010)).

Here, Plaintiff plausibly alleges that Defendants issued a false or misleading statement because they misrepresented to Plaintiff that they were accepting his payment to cover his March 2024 mortgage payment but instead applied that money to a past due amount that was satisfied by the Partial Claim. After misleading Plaintiff about the application of his payment, Defendant Cenlar attempted to collect additional funds from Plaintiff for a delinquency partially caused by its own misapplication. The least sophisticated consumer could interpret Defendant Cenlar's statements as false or misleading because they would be under the impression that they have already satisfied their monthly mortgage payment for March 2024, and therefore, would not be delinquent on their mortgage for nonpayment. Defendant Cenlar's statement is material because it could objectively affect the least sophisticated consumer's decision-making upon receiving their subsequent debt collection efforts via collection calls and dunning letters. *Powell*, 782 F.3d at 126. ("[O]nly misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decision-making are actionable"). Defendant Cenlar's subsequent collection efforts could lead the least sophisticated consumer to make an additional payment for March 2024, which would be significantly more than he would have paid if Defendant Cenlar did not misrepresent how they would be applying his payment Therefore, Plaintiff plausibly alleges a violation of 15 U.S.C. §§ 1692e(2)(A), (10).

Plaintiff also argues that Defendant Cenlar violated 15 U.S.C. § 1692f. Section 1692f of Title 15 of the United States Code prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "[T]he courts use § 1692f to

18

punish conduct that [the] FDCPA does not specifically cover." *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013). For this reason, "a § 1692f cause of action may not be based on the 'same alleged misconduct that undergirds [a] § 1692e claim.'" *Dudley v. Focused Recovery Sols., Inc.*, 2017 WL 2981345, at *4 n.3 (E.D. Va. July 12, 2017) (quoting *Biber v. Pioneer Credit Recovery, Inc.*, No. 1:16-cv-804, 2017 WL 118037, at * 11 (E.D. Va. Jan. 11, 2017)).

Here, Plaintiff's § 1692f claim is based on Defendant Cenlar falsely representing the manner in which they would apply Plaintiff's March 2024 mortgage payment, the same conduct undergirding his claims under § 1692e. Therefore, the Court finds that Plaintiff fails to state a claim under § 1692f because the claim is based on the same alleged misconduct undergirding his § 1692e claim.

### 3.   Foreclosure Efforts

Next, Plaintiff argues that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2)(A), (4), (5), (10), and 15 U.S.C. § 1692f(6) by falsely representing to Plaintiff in various correspondence that he was subject to foreclosure actions based on non-payment. Am. Compl. ¶ 122. In the Amended Complaint, Plaintiff makes three references to foreclosure. First, Plaintiff alleges that on March 11, 2024 "Defendants told Plaintiff that his account was in foreclosure and that it could not accept payment." *Id.* ¶ 38. Second, Plaintiff alleges that Defendants erroneously reported a foreclosure notation to at least one of the major consumer reporting agencies. *Id.* ¶¶ 48-53. Lastly, Plaintiff alleges that in September 2024 "Defendant continued regularly to send Plaintiff dunning letters, escalating to threats of foreclosure, and to call Plaintiff seeking to collect." *Id.* ¶ 91.

Defendant argues that pursuant to the Mortgage agreement, Plaintiff is contractually obligated to make full monthly payments, including any escrow shortage amounts, and failure to make such payments would result in foreclosure. ECF No. 24 at 11. Plaintiff concedes that he did

19

not pay the amount listed in his monthly statement and instead remitted a lower sum. Am. Compl. ¶¶ 39, 44. Defendant contends that since Plaintiff did not satisfy his monthly mortgage payment, it accurately notified Plaintiff of his delinquency, and that continued non-payment could result in foreclosure. ECF No. 24 at 11.

However, as previously discussed, Plaintiff has plausibly alleged that Defendant Cenlar falsely represented the amount and or utilized false representation to collect Plaintiff's mortgage payment and falsely represented that it would apply his March 2024 payment to the monthly mortgage amount. Thus, if Defendant Cenlar listed Plaintiff as delinquent based on the misrepresented monthly statement amount and or erroneously listed Plaintiff as delinquent on his mortgage payment based on the misapplication of his March 2024 payment, then it follows that Defendant Cenlar falsely represented to Plaintiff that he was subject to foreclosure. Therefore, Plaintiff has plausibly alleged a violation of 15 U.S.C. §§ 1692e(2)(A), (4), (5) and (10).

It is under this same rationale that Plaintiff plausibly alleges a violation of 15 U.S.C. §§ 1692e(2)(A), (8), and (10) by communicating to one or more consumer reporting agencies that his Mortgage was in foreclosure. Am. Compl. ¶ 125. Since Plaintiff has plausibly alleged that Defendant Cenlar made false or misleading statements about the amount that Plaintiff owed in his monthly statements, and misapplied his March 2024 payment, any foreclosure status that has occurred based on these false or misleading statements is also a misrepresentation of the amount owed and foreclosure status of his account. Therefore, Plaintiff plausibly alleges a violation of 1692e(2)(A), 8, and 10.

Plaintiff's claim under § 1692f(6) is based on the same conduct undergirding his claims under 1692e. Therefore, the Court finds that Plaintiff fails to state a claim under § 1692f because the claim is based on the same alleged misconduct undergirding his § 1692e claim. *Dudley*, 2017

20

WL 2981345, at *4 n.3 (E.D. Va. July 12, 2017) ("[A] § 1692f cause of action may not be based on the 'same alleged misconduct that undergirds [a] § 1692e claim'") (quoting *Biber*, 2017 WL 118037, at *11 (E.D. Va. Jan. 11, 2017)).

### 4. Removal of Derogatory Credit Information

Plaintiff argues that Defendant Cenlar violated 15 U.S.C. § 1692e(10) by falsely representing to Plaintiff that they would remove derogatory credit reporting. Am. Compl. ¶ 123. Plaintiff alleges that in or around November 2024, Defendants began reporting to major consumer reporting agencies that Plaintiff was past due on his Mortgage. *Id.* ¶ 103. During a phone call on or about November 26, 2024, Defendants told Plaintiff that they would remove the derogatory credit information if Plaintiff brought the loan current. *Id.* ¶ 105. Plaintiff alleges that he made a payment of $1,542.94 to bring the Mortgage current based on Defendants' accounting, but after receiving payment, Defendants sent a letter indicating that they would not remove the derogatory information. *Id.* ¶¶ 106-107.

A defendant violates 15 U.S.C. § 1692e(10) by utilizing "any false representation or deceptive means to collect or attempt to collect any debt." Here, Defendant Cenlar falsely represented to Plaintiff that they would remove certain derogatory credit reporting information if Plaintiff paid a certain amount of money to make his loan current. However, by failing to follow through with their promise to remove such information, Defendant Cenlar utilized this false representation to collect the money owed by Plaintiff. Therefore, Plaintiff plausibly alleges a violation of 15 U.S.C. § 1692e(10).

### 5.   Recent Escrow Analysis

Plaintiff argues that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2)(A) and (10) by falsely representing to Plaintiff that his mortgage payment had increased because of a recent escrow analysis. *Id.* ¶ 120. Plaintiff alleges that this statement was a false representation because at the time of the statement, Defendant Cenlar had not conducted an escrow analysis for ten months. *Id.* However, the Court finds that the Defendant's statement referencing a recent escrow analysis is too subjective to support an FDCPA violation. Defendant Cenlar's reference to a recent escrow analysis plausibly refers to the most recent escrow analysis conducted by Defendant Cenlar. The most recent escrow analysis conducted by Defendant Cenlar indicated that Plaintiff had an escrow shortage in the amount of $3,241.65 and raised his monthly payment to $1,838.96. Am. Compl. ¶¶ 30, 32. Therefore, under this interpretation of "recent" escrow analysis, the least sophisticated consumer would not interpret this representation as a false statement. Additionally, Plaintiff fails to plausibly allege facts sufficient to suggest that the least sophisticated consumer would be led to believe that Defendant Cenlar was referring to an escrow analysis other than the 2023 escrow analysis, which would render the statement false or misleading. *Powell*, 782 F.3d at 126 (4th Cir. 2014) ("Whether a communication is false, misleading, or deceptive in violation of [Section] 1692e is determined from the vantage of the least sophisticated consumer"). Therefore, Plaintiff does not state a claim under the FDCPA on this basis.

### 6.   Late Fees

Plaintiff argues that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2)(A), (2)(B), and 15 U.S.C. § 1692f(1) by falsely representing to Plaintiff that it was entitled to charge late fees and/or corporate advance fees, when it had no right to do so. Am. Compl. ¶ 124. As previously discussed, Plaintiff has plausibly alleged that Defendant Cenlar falsely represented the amount and/or utilized

false representation to collect Plaintiff's mortgage payment and falsely represented that they would apply his March 2024 payment to the monthly mortgage amount. Thus, to the extent that the late fees and/or corporate advance fees are derived from the misleading monthly mortgage statements and misapplied March 2024 payment, the fees charged are also a false representation of the amount owed.

Plaintiff's claim under § 1692f(1) is based on the same conduct undergirding his claims under § 1692e. Therefore, the Court finds that Plaintiff fails to state a claim under § 1692f(1) because the claim is based on the same alleged misconduct undergirding his § 1692e claim. *Dudley*, 2017 WL 2981345, at *4 n.3 (E.D. Va. July 12, 2017) ("[A] § 1692f cause of action may not be based on the 'same alleged misconduct that undergirds [a] § 1692e claim'") (quoting *Biber*, 2017 WL 118037, at * 11 (E.D. Va. Jan. 11, 2017)).

### 7.   Dunning Letters

Plaintiff argues that Defendant Cenlar violated 15 U.S.C. §§ 1692e(2)(A), (8), and (10) by threatening, in its dunning letters, to report Plaintiff as delinquent on his payments when it knew or recklessly disregarded the fact that he was not. Am. Compl. ¶ 126. As previously discussed, Plaintiff has plausibly alleged that Defendant Cenlar falsely represented the amount and or utilized false representation to collect Plaintiff's mortgage payment and falsely represented that it would apply his March 2024 payment to the monthly mortgage amount, which rendered him delinquent on his Mortgage payment. Thus, to the extent that Plaintiff's delinquency was caused by the previously mentioned misrepresentations, Plaintiff plausibly alleges that threatening to report Plaintiff as delinquent on his payments constitutes a false representation of the legal status of his debt and a false representation used to attempt to collect a debt. *See* 15 U.S.C. §§ 1692e(2)(A), (10).

Additionally, Plaintiff plausibly alleges that Defendant Cenlar sent the dunning letters while aware of the fact that Plaintiff satisfied his escrow account shortage through the Partial Claim and aware of its misapplication of his March 2024 payment creating a delinquency, which constitutes a threat to communicate credit information that should be known to be false in violation of 15 U.S.C. § 1692e(8).

### 8. Returning payments, failure to accept payments, and misapplying payments

Plaintiff argues that Defendant Cenlar violated 15 U.S.C. § 1692f by wrongfully returning Plaintiff's payments, failing to accept payments, and misapplying payments to create and/or deepen a default on his Mortgage. Am. Compl. ¶ 127. Plaintiff alleges that on June 25, 2024, Defendant Cenlar mailed him a check for $797.98 and indicated that his mortgage payment was insufficient to bring the Mortgage current. *Id.* ¶ 65. Plaintiff alleges that he called Defendant Cenlar on March 11, 2024, to make his first payment following reinstatement of the Mortgage, but Defendant Cenlar told him that his account was in foreclosure, and it could not accept payment. *Id.* at ¶ 38. Plaintiff also alleges that on or about March 14, 2024, he called Defendant Cenlar and made a monthly mortgage payment in the amount of $1,586.82 but Defendant Cenlar applied that payment to May 2020. *Id.* ¶ 39.

Section 1692f of Title 15 of the United States Code prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "[T]he courts use § 1692f to punish conduct that [the] FDCPA does not specifically cover." *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013). For this reason, "a § 1692f cause of action may not be based on the 'same alleged misconduct that undergirds [a] § 1692e claim.'" *Dudley v. Focused Recovery Sols., Inc.*, 2017 WL 2981345, at *4 n.3 (E.D. Va. July 12, 2017)

24

(quoting *Biber v. Pioneer Credit Recovery, Inc.*, No. 1:16-cv-804, 2017 WL 118037, at * 11 (E.D. Va. Jan. 11, 2017)).

Here, Plaintiff's § 1692f claim alleging that Defendant misapplied a payment to create a default on his mortgage is premised on the same conduct already covered by Plaintiff's § 1692e claim. Therefore, this portion of Plaintiff's claim is dismissed.

With respect to Plaintiff's remaining claims under § 1692f, Plaintiff fails to plausibly allege that Defendant Cenlar used "unfair or unconscionable means to collect a debt" by wrongfully returning payments and failing to accept payments. "Congress did not define 'unfair or unconscionable' but did provide a non-exhaustive list of examples." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 593 (E.D. Va. 2012). None of the alleged conduct is covered by this non-exhaustive list. *See* 15 U.S.C. § 1692f. "Relying on the plain meaning of the statute's terms, courts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is unscrupulous,' 'show[s] no regard for conscious,' or 'affront[s] the sense of justice, decency, or reasonableness.'" *Penn*, 883 F. Supp.2d at 593 (quoting *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185, 1200 (11th Cir. 2010)). Plaintiff's allegations do not rise to the level of unfairness or unconscionability contemplated by the statute. Plaintiff alleges that Defendant Cenlar refused to accept his payment on March 11, 2024, but he concedes that they accepted his payment just three days later on March 14, 2024. Am. Compl. ¶ 39. Plaintiff does not allege that this refusal of payment specifically caused Defendant Cenlar to charge late fees are any indicia of unfairness or unconscionable actions. Likewise, Plaintiff's allegation that Defendant Cenlar partially returned one of his payments does not indicate that it engaged in an unfair or unconscionable action. Therefore, Plaintiff fails to state a claim under § 1692f.

25

**B. Count II: Violation of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605(e)**

Plaintiff alleges that Defendants violated 12 U.S.C. § 2605(e) of the Real Estate Settlement Procedures Act by failing to substantively respond to his Qualified Written Requests.

"To survive a motion to dismiss, a plaintiff alleging violations of 12 U.S.C. § 2605(e) 'must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid Qualified Written Request, as statutorily defined, (3) the defendant failed to adequately respond within the statutory period, and (4) the plaintiff is entitled to damages.'" *Spangler v. U.S. Bank Tr. Co., Natl. Assn. as Tr. to U.S. Bank Natl. Assn.*, 2026 WL 711682 (W.D. Va. Mar. 13, 2026).

A borrower may bring a RESPA claim by submitting a "qualified written request" or "QWR" to the loan servicer and request "information relating to the servicing" of their loan. 12 U.S.C. § 2605(e)(1)(A). A QWR is a written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). When a servicer receives a QWR, it must, *inter alia*, provide a substantive response to that QWR within thirty business days. 12 U.S.C. § 2605(e)(2). In Count II, Plaintiff contends that Defendants did not substantively respond to his QWR letters.

A servicer may substantively respond to a QWR in two ways. First, a servicer may substantively respond by "mak[ing] appropriate corrections" and notifying the borrower. 12 U.S.C. § 2605(a); 23 C.F.R. § 1024.35(e)(1)(i)(A). Second, a servicer may conduct a "reasonable investigation," provide the borrower a written notification that no error occurred, a statement of

26

the reasons for that determination, a statement of the borrowers right to request documents relied upon, information on how the borrower can request such documents, and contact information for further assistance. 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1)(i)(B).

Here, Plaintiff sent QWR letters to Defendants on May 20 and July 17, 2024, addressing servicing errors such as: failure to accept payments; failure to properly and timely apply Plaintiff's payments; wrongful imposition of late fees and charges; and failing to provide periodic statements as required by 12 C.F.R. § 1026.41(d)(1). Am. Compl. ¶ 132. The Court addresses each letter in turn.

### 1.    May 2024 Letter

Plaintiff's May QWR alleged that Defendants failed to properly apply his March and April payments and erroneously cited that he was past due. *Id.* ¶ 71. Defendants responded on July 2, 2024, stating that they applied the March and April payments to the Mortgage and that they held the April 2024 payment in suspense pending full implementation of the Partial Claim. *Id.* ¶¶ 72-74. Plaintiff alleges that Defendants' response did not fully address the errors by detailing how they applied the March payment, indicate that the payments were insufficient, or address the purported delinquency. Am. Compl. ¶ 133. Furthermore, Plaintiff contends that Defendants provided inaccurate information about how they applied his March 2024 payment because it had been erroneously applied to May 2020, which rendered its investigation unreasonable under 12 C.F.R. § 1024.35(e)(1)(i)(B). *Id.* ¶ 134.

The Court finds that Plaintiff has pled sufficient facts to state a claim under RESPA. Defendants' response acknowledged that Plaintiff's March 2024 payment was applied to the mortgage, but they do not indicate how it was applied to the mortgage which is the primary error asserted by Plaintiff in his QWR. Defendants sent Plaintiff a letter indicating that they never

received the March 2024 payment, but they later conceded that they misapplied Plaintiff's March 2024 payment to May 2020. Then, in their response to the July QWR, Defendants claimed that the March 2024 payment was treated as a partial payment and held in suspense. Am. Compl. ¶¶ 98-99. None of this information is mentioned in their response to Plaintiff's May QWR which is crucial to explaining how Defendants determined that Plaintiff was delinquent on his payments. Therefore, Defendants' statement that the payment was applied to the mortgage fails to substantively respond to the error asserted by Plaintiff, which was that his mortgage payment was treated as past due. Furthermore, Plaintiff alleges that Defendants' response did not address the purported delinquency at all. Am. Compl. ¶ 74. "A servicer violates Regulation X where 'the substance of [the servicer's] letter [in response to a QWR] fails to clarify how [the servicer] made its determination that no error occurred." *Harris v. Nationstar Mortgage LLC*, 2020 WL 4698062, *8 (D. Md. Aug. 13, 2020). Defendants' failure to provide a substantive explanation of how they applied Plaintiff's March 2024 payment and why his account was delinquent calls into question the reasonableness of their investigation. Therefore, the Court finds that Plaintiff has adequately pled violations of RESPA based on the lack of a reasonable investigation.

### 2. July 2024 Letter

Plaintiff's July 2024 QWR alleged that Defendants overcharged him, failed to apply his full monthly payments, and rejected his payments. Am. Compl. ¶ 78. Plaintiff requested that Defendants correct these errors by returning his account to good standing, removing any late charges, removing any negative credit reporting, and accepting his payments of $1,587. *Id.*

Defendants responded to the July 2024 QWR by asserting that no errors occurred. *Id.* ¶ 100. However, Defendants acknowledged that there had been a delay in adjusting the payment amount to reflect the partial claim agreed upon amount of $1,586.82 until June 2024. *Id.* ¶ 96.

28

Defendants' response also indicated that Plaintiff's March 2024 payment was held in a suspense account, but during a phone call with Plaintiff, Defendants indicated that Plaintiff's account was past due because his March 2024 payment had been applied to May 2020. *Id.* ¶¶ 80, 99. Nevertheless, they contend that they addressed these claims by reducing Plaintiff's payment from $1,838.36 to $1,586.18. *Id.* at ¶ 87. They also provided a new Escrow Analysis which lowered Plaintiff's payment to $1,542.94. *Id.* ¶¶ 85, 87.

The Court finds that Plaintiff has alleged sufficient facts to state a claim under RESPA because Defendants indicated in their response that no errors occurred, yet they acknowledge several errors in the misapplication of Plaintiff's March 2024 payment and the delayed adjustment of Plaintiff's monthly payment after the execution of the Partial Claim. Additionally, Plaintiff plausibly alleges that Defendants failed to make the appropriate corrections by returning his account to good standing and crediting any late charge or penalties to Plaintiff. *See* 12 U.S.C. § 2605(e)(2)(A) ("[T]he servicer shall make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction...").

### C. Count III: Violation of the Real Estate Settlement Procedures Act 12 U.S.C. § 2605(k)

Finally, Plaintiff alleges that Defendants violated 12 U.S.C. § 2605(k) of the Real Estate Settlement Procedures Act by failing to sufficiently respond or investigate his Qualified Written Requests. Section 2605(k)(1)(E) provides that "[a] servicer of a federally regulated mortgage shall not...fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). Under 12 U.S.C. § 2605, when a servicer receives a QWR it

29

is obligated to, *inter alia*, provide a substantive response to that QWR within thirty business days. 12 U.S.C. § 2605(e)(2). A servicer may substantively respond by "mak[ing] appropriate corrections" and notifying the borrower, or by conducting a "reasonable investigation" and providing the borrower with a written notification that no error occurred. 12 U.S.C. § 2605(a); 23 C.F.R. § 1024.35(e)(1)(i).

For the reasons stated above, Plaintiff plausibly alleged that Defendants failed to conduct a reasonable investigation into the misapplication of the March 2024 mortgage payment, delayed application of the Partial Claim, and failed to make the appropriate corrections by returning his account to good standing and crediting any late charge or penalties to Plaintiff. Therefore, Plaintiff has plead sufficient factual allegations to state a claim under 12 U.S.C. § 2605(k) for "fail[ing] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part as set forth herein, ECF No. 23. Plaintiff fails to state a plausible cause of action for a violation of 15 U.S.C. 1692f, (1), and (6) which are based on the same conduct as his 1692e claims and he fails to state a claim under 1692e(2)(A) and (10).

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the Parties.

**IT IS SO ORDERED**

Norfolk, Virginia
June 9, 2026

_____
Raymond A. Jackson
United States District Judge

30